WILLIAMS, J.
11 Olivia B. Davis, the administrator of the Succession of Ervin Byrd, appeals a district court’s grant of summary judgment in favor of intervenors, Charles Etta Jones Jack, Alice Mae Jones Fulcher, Mary Louise Jones Woods and Norene Williams Wilson. For the following reasons, we affirm.
FACTS
Ervin Byrd (“Ervin”) died intestate on July 14, 1965. On February 8, 2011, his granddaughter, Olivia B. Davis (“Davis”), filed a petition to be appointed administrator of his succession; she was subsequently appointed as such. Thereafter, Davis executed a sworn affidavit of death and heirship, in which she attested that Ervin had been “married twice, first to Lena Grandway, who is also deceased.”[1] She also attested that her deceased father, Luther Byrd, was the only child “born of the union” between Ervin and Lena. She further attested that Ervin “did not have any other children nor did [he] adopt anyone[.]”[2]
On April 19, 2011, Davis, as administrator of Ervin’s succession, filed a “Petition for Authority to Enter a Mineral Lease” with Chesapeake Louisiana, L.P., with regard to certain property owned by the succession. An advertisement of the application to grant the lease was published in The Times on April 11, 2011, and no opposition was filed thereto. Thus, the district court signed the order granting Davis the authority to enter into the 12lease.
On September 26, 2012, Charles Etta Jones Jack, Alice Mae Jones Fulcher, Mary Louise Jones Woods and Norene Williams Wilson intervened in the Succession of Ervin Byrd by filing a “Petition for Intervention and Rule to Show Cause.” They alleged that their father, Robert C. Byrd (“Robert”), was the son of Ervin Byrd, and they did not learn of the succession proceedings until September 14, 2012. They also alleged that Robert died intestate on November 30, 1987, and the judgment of possession in Robert’s succession, which was signed and recorded on February 11, 2005, placed intervenors in possession of “[a]ll of Robert C. Byrd’s interest in the unopened Succession of Ervin Byrd,” including the property described in the current (Ervin’s) succession.[3] Interve-nors requested “the issuance of an injunction preventing any distribution of any property belonging to the decedent, including mineral proceeds of any kind, until the claims of Petitioners herein, as heirs of the decedent ERVIN BYRD, [are] determined[.]”
*1060 Following a hearing, the district court granted the rule and ordered that Davis be enjoined “from making any distribution of any property unto |3any heirs of the decedent, ERVIN BYRD, pending the outcome of these proceedings.” Davis was also ordered to disclose to intervenors “an inventory of all property, and a complete disclosure of all previous proceeds and distributions of property to the heirs, including, but not limited to, bonus and/or royalty payments[.]”
Subsequently, intervenors moved for summary judgment, seeking to be recognized “as the descendants of Ervin Byrd, through their father, Robert C. Byrd.” In support of the motion, intervenors submitted certain documents, including (1) Robert’s death certifícate, which listed Ervin Byrd as his father and Agnes McKinney as his mother; (2) a sworn affidavit executed by Mary Louise Jones Woods, in which she attested that she and her siblings often visited with their grandfather, had attended family gatherings and had always referred to Ervin as their grandfather; (3) an affidavit of possession executed by Robert, stating that he was the grandson of Sam and Emma Byrd (Ervin’s parents); (4) a copy of a legal file showing that Robert had unsuccessfully attempted to open Ervin’s succession; (5) a copy of a legal file showing that intervenor, Mary Woods, had unsuccessfully attempted to open Ervin’s succession.[4]
In response to the motion for summary judgment, Davis argued that “[there] is no direct evidence to support Intervenors’ contentions that Robert C. Byrd is the child of Ervin Byrd.” Additionally, she filed an exception of peremption, arguing that Ervin did not formally acknowledge Robert during his lifetime and that Robert did not establish filiation within one year of 14Ervin’s death.
Following a hearing, the district court granted summary judgment in favor of intervenors, and ordered Davis “to amend the Affidavit of Death and Heirship of the Intestate Succession of Ervin Byrd, to show that Robert C. Byrd was one of the two children of Ervin Byrd, and to show that Intervenors are all of the children of the deceased, Robert C. Byrd, and to administer the succession in accordance with the laws of representation and intestacy.” In its reasons for judgment, the trial court stated:
The Court deems some of the affidavits presented by each side to contain both speculative opinions and, in some respects, hearsay.
[[Image here]]
Of the above items of summary judgment record, the Court deems the certified Death Certificate to carry significant weight. La. R.S. 40:42 provides that original certificates in the Division of Vital Records of the State Registrar of Vital Statistics shall be admissible as prima facie evidence of their contents. LCE Art. 803(9) deems records of vital statistics as ‘records or data compilations in any birth, filiation, adoption or death.’
Davis appeals.
DISCUSSION
Davis contends the district court erred in granting summary judgment in favor of intervenors. She argues that the evidence submitted, including Robert’s death certificate, was insufficient to establish that in-tervenors are the heirs of Ervin Byrd. She *1061 also argues that the court erred in giving “significant weight” to the death certificate.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the movant is [¡¡entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). A genuine issue of material fact is one as to which reasonable persons could disagree. Argonaut Great Cent. Ins. Co. v. Hammett, 44,308 (La.App.2d Cir.6/3/09), 13 So.3d 1209, writ denied, 2009-1491 (La.10/2/09), 18 So.3d 122.
When a motion for summary judgment is properly made and supported, the adverse party may not rest on the mere allegations or denials of his pleading, but he must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967(B). This requires the plaintiff to make a positive showing of evidence creating a genuine issue as to an essential element of her claim; mere speculation is not sufficient. Babin v. Winn-Dixie Louisiana, Inc., 2000-0078 (La.6/30/00), 764 So.2d 37; Caret v. Louisiana Extended Care Hosp., 47,141 (La.App.2d Cir.5/16/12), 92 So.3d 1122. If the adverse party fails to produce the required factual support to show that she will be able to meet her evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. LSA-C.C.P. art. 966(C)(2); Caret, supra; Russell v. Eye Associates of Northeast Louisiana, 46,525 (La.App.2d Cir.9/21/11), 74 So.3d 230.
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Argonaut Great Cent. Ins. Co., supra. Summary judgments are favored under Louisiana law; however, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and doubt must be resolved in the opponent’s favor. | r,LSA-C.C.P. art. 966(A)(2). Argonaut Great Cent. Ins. Co., supra.
In the instant case, Robert was born out of wedlock on September 6, 1912; Ervin died intestate in 1965. At the time of Robert’s birth and Ervin’s subsequent death, former LSA-C.C. art. 919 (enacted in 1908 and repealed in 1981) specifically barred “illegitimate” children from inheriting from their alleged natural fathers in the same manner as “legitimate” descendants, ascendants, collateral relatives and surviving spouses. The laws which discriminated against illegitimate children were declared unconstitutional by the United States Supreme Court in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), and by the Louisiana Supreme Court in Succession of Brown, 388 So.2d 1151 (La.1980); however, those rulings are given only limited retroactive effect to January 1,1975, the effective date of the Louisiana Constitution of 1974. See, Succession of Clivens, 426 So.2d 585 (La.1982); Harlaux v. Harlaux, 426 So.2d 602 (La.1983), cert. denied, 464 U.S. 816, 104 S.Ct. 74, 78 L.Ed.2d 86 (1983).[5]
*1062 Thereafter, from 1980 until 2005, Louisiana law permitted children born out of wedlock to prove paternal descent by “informal acknowledgment.” For example, former LSA-C.C. art. 209 provided that proof of “paternal descent” could be made “[b]y all kinds of private writings, in which the father may have acknowledged the ‘bastard’ as his child, or may have called him so;” or “[w]hen the father, either in public or in private, |7has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such[.]”
We have conducted a de novo review of this record in its entirety. As stated above, in support of the motion for summary judgment, intervenors submitted the documents from the Succession of Robert Byrd and the death certificate of Robert C. Byrd. The death certificate listed Ervin Byrd as Robert’s father and Agnes McKinney as his mother.
Except for delayed or altered certificates, every original certificate on file in the vital records registry is prima facie evidence of the facts therein stated. LSA-R.S. 40:42(A). Records or data compilations of death, and any record included within the Louisiana Vital Statistics Laws, are not excluded by the hearsay rule. LSA-C.E. art. 803(9).
Thus, pursuant to LSA-R.S. 40:42(A), Robert’s death certificate, on which Ervin was named as his father, was sufficient to establish a prima facie case that Ervin was Robert’s father. Thereafter, it was incumbent upon Davis, as the plaintiff, to rebut the veracity of the certificate. Davis did not do so.
Rather, Davis introduced affidavits executed by five of her siblings and her, in which they attested that their father was Ervin’s only child, and, to their knowledge, Ervin never acknowledged Robert. However, during their deposition testimony, Davis and her siblings admitted that Robert lived on the Byrd family land and that they referred to Robert as “Uncle Booger.” One sibling testified that he had heard Ervin refer to Robert as “son.” Two of the siblings also admitted that Robert and his children attended family [ ^gatherings.
It is undisputed that Robert was given Ervin’s last name, rather than that of his mother. Additionally, the evidence included the above referenced deposition testimony from various family members which indicates that Robert lived on the Byrd family’s acreage, land that previously was owned by his grandparents, Sam and Emma Byrd. The evidence also showed that Davis and her siblings referred to Robert as “uncle.” Moreover, in 1982, Robert executed an affidavit, attesting that he was the grandson of Sam and Emma Byrd. The facts in the affidavit were also attested to by Lula Byrd, the spouse of Ervin’s brother, Moses Byrd. However, more importantly, as stated above, interve-nors introduced into evidence the judgment of possession in the Succession of Robert Byrd, which placed them into possession of Robert’s interest in the “opened Succession of Ervin Byrd.”
Accordingly, under the facts of this case, we find that the district court did not err in granting summary judgment in favor of intervenors. This assignment lacks merit.
Davis also contends the district court erred in failing to address her exception of prescription. She argues that the interve-nors’ claim has prescribed because no action to establish filiation was filed within one year of Ervin’s death.
In the Succession of Robert Byrd, inter-venors obtained a “Judgment of Possession” on February 11, 2005. This judgment placed them in possession of “[a]ll of Robert C. Byrd’s interest in the unopened *1063 Succession of Ervin Byrd[.]” There is no evidence in the current record to establish that |9Davis or any of her siblings ever challenged that judgment.[6] Provided she could prove standing, Davis had two years from the date of the finality of the judgment of possession in Robert’s succession to challenge the judgment.[7] This record does not show that she ever attempted to do so. Thus, that seven-year-old final judgment constitutes prim a facie evidence that Robert Byrd had an interest in the succession of his father, Ervin. Interve-nors have now been placed in possession of that interest. The judgment of possession cannot be collaterally attacked in these proceedings. This assignment lacks merit.
CONCLUSION
For the foregoing reasons, the district court’s judgment, granting summary judgment in favor of intervenors, Charles Etta Jones Jack, Alice Mae Jones Fulcher, Mary Louise Jones Woods and Norene Williams Wilson, is affirmed. Costs of this appeal are assessed to Olivia Davis, as administrator of the Estate of Ervin Byrd.
ImAFFIRMED.

. Ervin's second wife was Rosie Byrd (deceased). No children were born of that marriage.

. The affidavit was co-executed by Davis’ husband, Arthur Davis. Subsequently, during her deposition testimony, Olivia admitted that she and Arthur were not married until approximately nine years after Ervin's death. Therefore, he was not acquainted with Ervin and had no personal knowledge of the facts to which he attested.

. Attached to intervenors’ petition was the Affidavit of Death and Heirship that had been filed in Robert’s succession. The affidavit provided in part:
ROBERT C. BYRD was the son of ERVIN BYRD and AGNES MCKINNEY.
[[Image here]]
ERVIN BYRD was married twice. The first marriage to Lena Grandway, who is deceased. One child was born of that union, namely Luther Byrd, who is deceased. ERVIN BYRD was then married to Rosie Byrd, who is deceased. No children were bom of that marriage. ROBERT C. BYRD was born of the union of ERVIN BYRD and Agnes McKinney. To the knowledge of Affi-ants, ERVIN BYRD had no other children.
[[Image here]]

. The record, with regard to the attempts to open the succession, contains multiple letters addressed to the heirs of Luther Byrd. However, the record does not indicate whether Luther Byrd’s heirs responded to the letters.

. While Brown was pending in the supreme court, the legislature passed Act No. 549 of 1980, amending LSA-C.C. arts. 208 and 209 with regard to proof of filiation of unacknowledged illegitimate children; these articles were again amended in 1981. In effect, the articles gave unacknowledged illegitimate children, who had been prohibited from bringing an action to prove filiation, until September 11, 1982, to file such actions. If such lawsuit had not been filed prior to that date, "filiation may not thereafter be established.”

. The judgment of possession rendered in a succession proceeding shall be prima facie evidence of the relationship to the deceased of the parties recognized therein, as heir, legatee, surviving spouse in community, or usu-fructuary, as the case may be, and of their right to the possession of the estate of the deceased. LSA-C.C.P. art. 3062.

. LSA-R.S. 9:5630 provides, in pertinent part:
A. An action by a person who is a successor of a deceased person, and who has not been recognized as such in the judgment of possession rendered by a court of competent jurisdiction, to assert an interest in an immovable formerly owned by the deceased, against a third person who has acquired an interest in the immovable by onerous title from a person recognized as an heir or legatee of the deceased in the judgment of possession, or his successors, is prescribed in two years from the date of the finality of the judgment of possession.
[[Image here]]