MOORE, J.
|, Devlin and Eureka Ellis, individually and on behalf of their three minor children, appeal a judgment awarding them damages as a result of a minor collision on an Interstate entrance ramp. We affirm.

Factual Background

On the evening of March 8, 2014, Eureka Ellis was driving her husband’s white 2013 Dodge Charger; the couple’s three children, Precious, Devonta and Detrayle (ages 17, 16 and 15', respectively), were passengers. Ms. Ellis was taking the eastbound entrance ramp from Thomas Road onto 1-20 in West Monroe. At the same time, Gregory Brown, driving his 2009 Chevy Silverado, was taking the same entrance ramp onto 1-20. Apparently, Brown attempted to merge into the outer lane, where Ms. Ellis was driving, before the space was clear and the Silverado made contact with the Charger, leaving a small ding and two scratches on its driver’s side rear quarter panel. Ms. Ellis and Devonta testified the impact was “pretty hard,” although in deposition Devonta had called it “a little jerk.” Precious said it was “kind of hard,” while Brown called it “very slight.”
Ms. Ellis and Brown exited their vehicles, and Brown asked her if they even needed to call the police; however, she had already phoned her husband, who told her to call the police, so she did. A policeman came to the scene, but he wrote no ticket. He asked Ms. Ellis 'and the children, who had remained in the car, if they were injured or needed medical attention, and they told him no. (The parties also referred to an accident report, but it was not introduced into evidence.)
12Mr. Ellis’s insurer, State Farm, wrote an estimate for repairs to the Charger’s left rear quarter panel and bumper cover, a new tape stripe, and painting and coating, a total of $1,232.98. Less Mr. Ellis’s $250 deductible, the payment was $982.98. (No copy of the insurance check was introduced into evidence.) Mr. Ellis testified that he took the ear to his brother, who performed the repairs for the insurance check plus $250 cash. Mr. Ellis admitted he had no receipts for the repairs.
Ms. Ellis and the children never sought treatment from a medical doctor. However, 12 days after the accident, March 20, they went to Dr. Dan Holt, a chiropractor in Monroe. Dr. Holt diagnosed all four patients with peck pain, upper, middle and low back pain, and some of them with headaches, shoulder or leg pain. Although X-rays showed no anatomical injuries, he considered them to be suffering from sprains, strains, headaches and various limitations of motion; he diagnosed five or six subluxations in each patient. He prescribed a very active course of therapy, including spinal manipulation, electrical stimulation, traetion, ice, massage and trigger points, with treatments twice a week for six months. For nearly three months, all four patients came to the office regularly, and Dr. Holt noted gradual improvements, especially in Devonta, citing objective observations and the patients’ reports. They did not complete the regimen, however, as they went out of town for a family funeral in early June and, after they got back, they , simply did not return to the chiropractor. Dr. Holt testified that because of this, they had probably not reached maximum medical benefit. Still, he submitted a, bill for his services: he treated Ms. Ellis, Precious and RDetrayle 22 times, for a total of $3,955.00 each, and Devonta 21 times, for a total of $3,520.00.

Procedural History and Trial Evidence

The Ellises, individually and on behalf of the children, • filed this suit in September *668 2014 against Brown and his insurer, Continental Casualty Co., demanding general damages for the auto accident and loss of consortium, and special damages for the chiropractor bills, repairs to the Charger and Ms. Ellis’s two lost days’ wages. In June 2015, the court granted the plaintiffs’ motion for summary judgment, holding that Brown was 100% at fault in causing the accident.
The matter came to trial over two days in July and August 2015; various eviden-tiary matters, mentioned below, were not resolved pretrial. Plaintiffs’ counsel conceded that their insurer, State Farm, was subrogated to their insurer’s position with respect to the insurance check and that their claim was for only the $250. deductible.
Ms, Ellis testified as outlined above, but after admitting she Rad no time sheets or pay stubs to document any missed work, she waived her lost wages claim. She also admitted that in July 2012 (20 months before the instant accident), she had been in another auto. accident, for which she (and Detrayle) had received chiropractic treatment with a different chiropractor, Dr. Arnold Harris,, and reported injuries very similar to those in the instant claim. She insisted that in the earlier accident, a rear-end collision on 1-20 in West Monroe, the impact was not as, hard as when Brown sideswiped her on the entrance ramp.
|4Mr. and Ms. Ellis gave inconsistent testimony about the' repairs to the Charger. In response to discovery, they had offered not the original color photos but grainy, black-and-white photocopies, even though Mr. Ellis said his brother (the repairman) still had the originals. Mr. Ellis was unsure if the photos were taken before or' after the repairs; Ms.' Ellis said they were taken before.- Exhibit P-7, admitted into evidence, seems to show one shallow scratch- above the driver’s-side combination light.
Two of the children, Precious and De-vonta, testified as outlined above. On cross-examination, Precious, denied that she injured her leg or limped into Dr, Holt’s office, although Dr. Holt had recorded these observations. Devonta admitted stating in deposition that he did not hurt his shoulder, but insisted'that he really did. Detrayle did not testify because, according to Mr. Ellis, he is developmentally disabled.
Dr. Holt presented a meticulous.review of each patient’s every visit, voicing his extreme confidence in their complaints of pain and impaired function in activities of daily life. On cross-examination, he admitted his license had been suspended in the 1990s for, as he called it, administrative charges (defense counsel called it over-treating Medicaid patients), that he often reduced his fees for volume customers and waived them for litigants who lost their cases, and had an advertising agreement with plaintiffs’ counsel (who had bought out Dr. Holt’s billboard contract). Notably, Dr. Holt claimed to be unaware of this court’s opinion, Pratt v. Culpepper, 49,627 (La.App. 2 Cir. 2/27/15), 162 So.3d 616, which held that evidence of his suspension was admissible to show his history of over-treatment and Ifito impeach his recommendations of long-term chiropractic care.
Dr. Harris, the prior chiropractor, testified . that he had treated Ms. Ellis and Detrayle in 2Q12, but they had quit coming to appointments long before the prescribed course of treatment ended. He also gave Ms. Ellis a TENS (transcutaneous electrical nerve stimulator) unit to use at home as needed, as she was still in pain as of November 2012.
Finally, Brown testified, saying the impact was “very slight.” He looked and *669 saw only a scratch on the Charger, and no dent at all.

Action of the Trial Court

The court did not rule from the bench but told the parties that some damages were in order, of a minimal nature, as in Smart v. Calhoun, 49,943 (La.App. 2 Cir. 7/29/15), 174 So.3d 168, as it was a “minor collision resulting in minor injuries.” The court found the children’s testimony “kind of mechanistic,” they must not have been in much pain because they suddenly quit going to Dr. Holt, and the biggest disruption in their lives was having to go to the chiropractor.
By posttrial brief, plaintiffs’ counsel requested $7,500 general damages for Ms. Ellis and each child, an unspecified amount for Mr.' Ellis’s loss of consortium, $15,385 for Dr. Holt’s bills, $750 for Dr. Holt’s expert fee, and $500 for Mr. Ellis’s deductible.
Two weeks after trial, the court rendered oral judgment (in open court, but with no attorneys present) awarding general damages of $1,500 to Ms, Ellis, $1,000 to each of the children, and half of Dr. Holt’s bills, or $7,692.50. The court explicitly denied Mr. Ellis’s consortium claim and Dr. RHolt’s expert witness fee, and said nothing about the. property damage claim. The court stated that reasons for judgment would be issued on request, but no one ever requested them.'
After formal judgment was rendered, the plaintiffs took this devolutive appeal, designating three assignments of error.

Discussion: Property Damage

By their first assignment of error, the Ellises urge the court erred in failing to award any amount as property damage. They show that the adjuster fixed the cost of repair at $1,232.98, and argue that they are “clearly entitled” to .this amount. They also contend that in light of. the collateral source rule, the defendant is not entitled to any reduction for the portion paid by insurance, citing American Eagle Inc. v. Employers’ Liability Assur. Corp., 389 So.2d 1339 (La.App. 1 Cir.1980), writs denied, 396 So.2d 885 (1981).
Plaintiffs’ counsel told the district court:
My client’s vehicle was repaired by their own insurance company which subrogat-ed to his company, ' I’m not here to ask for the repairs that they got[,] which! think was one thousand and something dollars. I’m just going to be asking for the return of their $250 deductible.
In addition, Mr. Ellis testified that he received an insurance check for $982.98 and thus was requesting only his deductible, $260. As a declaration made by a party in a judicial proceeding, this is a judicial confession and constitutes full proof against the party who made it. La. C.C. art. 1853; Chichirillo v. Avondale Indus. Inc., 2004-2894 (La.11/29/05), 917 So.2d 424; Waters v. Perry, 49,971 (La. App. 2 Cir. 178/12/15), 174 So.3d 1207. Moreover, the collateral source rule does not apply where the right of subrogation is involved; in such a case, the plaintiff may recover only his remaining interest in the partially subrogated claim. Southern Farm Bur. v. Sonnier, 406 So.2d 178 (La.1981); Smith v. English, 586 So.2d 583 (La.App. 2 Cir.), writ denied, 590 So.2d 80 (1991). In light of Mr. Ellis’s testimony, and of counsel’s representation to the district court, it is untenable for the plaintiffs now to request the full $1,232.98 (or, in posttrial brief, a $500 deductible). The only viable claim is for $250.
The party who has the burden of proof must prove the fact in issue by a preponderance of the evidence. Hunter v. Morton’s Seafood Rest. & Catering, 2008-1667 (La.3/17/09), 6 So.3d 152; Arnold v. Ouachita Parish Fire Dept., 44,378 (La. *670 App. 2 Cir. 5/13/09), 12 So.3d 461, writ denied, 2009-1339 (La.9/25/09), 18 So.3d 69. Mr. Ellis testified that he took- the Charger to his brother, gave him $250 cash and the insurance check, and the brother repaired the car. However, the plaintiffs offered no receipt for the cash payment, no invoice or receipt for the repairs, and no copy of the insurance check (which would have shown that the brother actually cashed it). They offered no original photos of the damage or the repairs, and the testimony was inconclusive whether the black-and-white copy introduced in evidence was taken before or after repairs. The copy did not show a fully repaired rear quarter panel. On this evidence, the district court was entitled to find insufficient proof that' the plaintiffs ever actually paid the $250 deductible or got the car repaired. This assignment of error lacks merit.
1 sGeneral Damages
By their second assignment of error, the Ellises urge -the court erred in failing to award sufficient general damages. They contend the defense tried to accuse them of fraud, and did not succeed, but the attack on their credibility influenced the court to make an unreasonably low award. They submit that “similar” soft-tissue injuries have resulted in awards of $7,500 for three months, in Williams v. Roberts, 05-852 (La.App. 5 Cir. 4/11/06), 930 So.2d 121; $6,800 for one month, in Gilliard v. Collins, 42,460 (La.App. 2 Cir. 11/7/07), 969 So.2d 786; and $4,500 for one month, in Cole v. Pool, 34,329 (La.App. 2 Cir. 12/6/00), 774 So.2d 1081. They argue that the lowest reasonable amount would be $4,500 for Ms. Ellis and $3,000 for each of the children.
General damages are those which may not be fixed with pecuniary exactitude; instead, they involve “mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.” Kaiser v. Hardin, 2006-2092 (La.4/11/07), 953 So.2d 802, and citations therein. Vast discretion is accorded the trier of fact in fixing general damage awards. La. C.C. art. 2324.1; Kaiser v. Hardin, supra. This vast discretion is such that the appellate court should only rarely disturb an award of general damages. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379. (1994). Before an appellate court can alter an award of general damages, it must find, through articulated analysis, that the trier of |3fact clearly abused its discretion, and even then the appellate court may not substitute its own opinion, but is confined to raising (or lowering) the award to the lowest (or highest) amount that would have been within the trial court’s discretion. Guillory v. Lee, 2009-0075 (La.6/29/09), 16 So.3d 1104, and citations therein.
The district court stated firmly and repeatedly that the plaintiffs’, injuries were minor, subject to “relatively minor” damages. It even implied that the children’s testimony was so “mechanistic” that it considered finding no injury. On this record, the court’s factual finding is impossible to assail. It is supported by Brown’s testimony of a very slight impact, Devonta’s initial description of a “little jerk,” and the relatively insignificant damage to the Charger. There is also the testimony of Dr. Holt, which is fairly tinged by his ambition to get tort patients into a system of long and elaborate treatment, a habit of overcharging Medicaid, and an inclination to reduce fees for unsuccessful claimants, all points found by this court in Pratt v. Culpepper, supra. He even reported that *671 Precious was walking with a limp, a point that she expressly denied. On this record, the-district court was fully within its discretion to discount Dr. Holt’s opinion of the plaintiffs’ injuries.
Because we find no abuse of discretion, it is not really necessary to consider the awards in other reported cases, but tó contrast cases like Williams v. Roberts, Gilliard v. Collins and Cole v. Pool, supra, we would note the truly minimal award in Smart v. Calhoun, supra, and the finding of no injury in Pratt v. Culpepper, supra, both affirmed by this court. The instant awards are not out of the range of discretion. This assignment of error lacks merit.

Chiropractor Bills

By their third assignment of error, the Ellises urge the court erred in failing to award the full amount of their medical bills. They contend the court lacks the discretion to award less than the full amount, Sumrall v. Sumrall, 612 So.2d 1010 (La.App. 2 Cir.1993), and that the court must even award overtreatment as long as it is not incurred in bad faith, Simon v. Lacoste, 2005-550 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102; Orgeron v. Prescott, 93-926 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, writ denied, 94-1895. They submit the court should not have placed so much emphasis on Ms. Ellis’s credibility problems, as inconsistencies are “common among uneducated witnesses.” They request judgment for the full amount of Dr. Holt’s bills.
Special damages are those which have a “ready market value,” such that the amount of the damage theoretically may be determined with relative certainty, including medical expenses and lost wages. Guillory v. Lee, supra. The plaintiff has the burden of proving the damage he suffered as a result of the defendant’s fault. Wainwright v. Fontenot, 2000-0492 (La.10/17/00), 774 So.2d 70. This court has often stated that the defendant is required to pay the cost of over-treatment or unnecessary medical treatment unless it was incurred by the victim in bad faith. See, e.g., Davenport v. Giles, 46,606 (La.App. 2 Cir. 11/2/11), 80 So.3d 492; Green v. Nunley, 42,343 (La.App. 2 Cir. 8/15/07), 963 So.2d 486; Beasley v. Yokem Toyota, 33,805 (La.App. 2 Cir. 8/23/00), 767 So.2d 149. Nonetheless, the supreme court has held that the defendant is liable only for those expenses that are related to the defendant’s conduct, Wainwright v. Fontenot, supra, and that the trier of fact may disallow medical expenses that it reasonably finds unrelated to the accident, Guillory v. Lee, supra. Further, in order to reverse or amend a trial court’s award of special damages, the appellate court must find no reasonable basis for the trial court’s factual conclusions, and that the award is clearly wrong. Guillory v. Lee, supra.
As noted, the district court found that this was a low-impact collision that resulted in very minor injuries and warranted minimal general damages. While the court declined to find fraud, it found that the children “just did what they were told” in going to the doctor, that going to the chiropractor was “the biggest disruption of these people’s lives,” and that they dropped the treatment “as soon as it became inconvenient for them.” In effect, the court found that the Ellises went to Dr. Holt for about three months, but only about half of this treatment was reasonably related to the collision with Brown. If the district court had .chosen to award Dr. Holt’s full bill, this court would likely have affirmed, in light of the rationale of Davenport, Green and Beasley, supra. However, on this record we cannot say the district court abused its discretion in finding that only about 1½ months’ treatment *672 was fairly related to the accident. On the authority of Wainwright and Guillory, supra, we find a reasonable basis for, and no clear error in, the district court’s .award of chiropractic expenses. This assignment of error lacks merit.
| ^Conclusion
For the reasons expressed, the judgment is affirmed. All costs are to be paid by Devlin and Eureka Ellis, individually and on behalf of their three minor children.
AFFIRMED.