MOORE, J.
Chad McCartney appeals a judgment ordering him to pay his ex-wife, Sonya McCartney, $109,398.50 to satisfy a partition of community property agreement. For the following reasons, we amend and affirm.
FACTS
According to this slender record, Chad and Sonya dissolved their community in June 2010 and, on September 29, 2011, executed a partition of community property agreement ("the agreement"). Among other things, the agreement required Chad to pay Sonya $700,000, with a credit of $277,696.22 for a payment already made in June 2011; a minimum of $100,000 due within 10 days of the agreement; and the balance due by June 1, 2012.
Sonya filed this petition for specific performance in December 2016. She alleged that Chad had made the following payments:
June 2011: $277,696.22 (in mutual funds), $15,562.26 (also in mutual funds), $3,680 and $5,400 (both in cash)
*1103 December 2011: $100,000 and $50,000 (both in cash)
June 2013: $52,619.21 (in mutual funds), $3,813.79 (in cash), and $95,000 and $42,000 (both in "retirement money," but identified in the agreement, Exhibit "A," as "401K and/or retirement accounts in his name").
Sonya alleged that the after-tax value of the retirement accounts was only $95,900, and thus Chad had paid her only $604,671.48. She demanded the balance due on the agreement, $95,328.52, plus legal interest from June 1, 2012.
Chad admitted all allegations, but asserted "payment, set-off, and confusion," in that he had made various payments to Sonya in excess of what was due under the agreement: rent for her mobile home and lot, utilities, insurance premiums, and moving and storage fees, for a total of $68,320. He ultimately argued that with credit for these payments, and for the face value of the retirement accounts, he had more than satisfied the $700,000.
At trial, in August 2017, Sonya offered a copy of the agreement; copies of her 2016 tax returns, prepared by Philip Dale Soignier, CPA, showing that if she withdrew the IRA funds, her tax liability would increase by $55,170; and a statement from Waskom & Brown, Accountants, for professional services of $625. The parties also offered a joint stipulation:
If converted to cash, $55,170 must be paid on the $137,000 rolled over retirement monies. The tax was based on the 2016 tax return of Ms. McCartney and the tax return was verified by Mr. Soignier, the CPA preparer of the 2016 tax return. Mr. Soignier also indicated that Ms. McCartney's income when the $137,000 was paid was essentially the same as in 2016. The $55,170 would be the tax and 10% penalty which would be owed if the $137,000 is withdrawn in 2017.
Sonya argued that on this evidence, Chad still owed her $109,398.52 on the agreement.
Aside from the joint stipulation, Chad offered no evidence. He reiterated his "affirmative defenses" of payments totaling $68,320, but conceded that he did not have any documentation for these. He also argued that Sonya was not "required" to convert the IRAs to cash, and allowing her to do this would amount to unjust enrichment.
ACTION OF THE DISTRICT COURT
The district court issued reasons for judgment, essentially adopting Sonya's positions. The court found no proof of any of Chad's alleged payments, and accepted that the IRAs were worth $55,170 less than face value if cashed in immediately. It rendered judgment in Sonya's favor, for $109,398.50.
Chad took this suspensive appeal. He designates three assignments of error.
DISCUSSION
Treatment of the IRAs
By his first assignment of error, Chad urges the court erred in rendering a money judgment based on an incomplete and disjointed record. He argues that the only evidence was exhibits, with "no real rhyme or reason," no live witnesses, and a stipulation concerning income taxes which Sonya "may or may not pay, depending on her whim." He contends that courts have vacated judgments and remanded for deficiencies like these,[1] and urges this court to *1104 do likewise, i.e., to reverse and remand for a "trial in the ordinary fashion."
By his second assignment of error, Chad urges the court erred in reducing the value of two retirement accounts transferred by him to Sonya by the value of a potential, unliquidated tax liability. In brief, he asserts that he transferred these IRAs in December 2011, five years before suit was filed, giving her plenty of time to "roll them over" into another retirement account or annuity, which might reduce her tax by spreading the withdrawal over several years.[2] He contends it is unjust enrichment for him to bear the cost of her income tax liability, at her sole discretion; citing La. C.C. art. 2298, he argues that he has been impoverished by Sonya's decision to cash in the accounts. He submits that in similar circumstances, other courts have applied a pro rata portion of tax liability to both spouses.[3] He concludes that this court should reverse the portion of the judgment that reduced the value of the IRAs by $55,170.
Sonya responds that the court did not abuse its discretion in finding that she would receive less than agreed on in the agreement if she had to pay the taxes and penalties on withdrawing the funds. She cites Stewart v. Stewart , 2010-1525 (La. App. 3 Cir. 5/4/11), 63 So.3d 1174, in which the court interpreted a community property partition judgment as meaning the ex-wife did not expect to have to pay taxes on her portion of a thrift savings plan. She argues that the cases cited by Chad are inapposite, and concludes that the district court interpreted and applied the agreement correctly.
A husband and wife's agreement to partition community property is a transaction and compromise as contemplated by La. C.C. art. 3071. Unkel v. Unkel , 29,728 (La. App. 2 Cir. 8/20/97), 699 So.2d 472 ; Walton v. Walton , 597 So.2d 479 (La. App. 1 Cir. 1992). A compromise agreement, like other contracts, is the law between the parties and must be interpreted according to the parties' true intent. Suire v. Lafayette Consol. City-Parish Gov't , 2004-1459 (La. 4/12/05), 907 So.2d 37. Courts give contractual words their generally prevailing meaning unless the words have acquired a technical meaning. La. C.C. art. 2047. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties. La. C.C. art. 2046 ; Mack Energy Co. v. Expert Oil & Gas LLC , 2014-1127 (La. 1/28/15), 159 So.3d 437. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. La. C.C. art. 2053 ; Olympia Minerals LLC v. HS Resources Inc. , 2013-2637 (La. 10/15/14), 171 So.3d 878 ; Total Minatome Corp. v. Union Texas Prods. Corp. , 33,433 (La. App. 2 Cir. 8/23/00), 766 So.2d 685, 147 Oil & Gas Rep. 304. The *1105 parties' undisputed course of conduct in interpreting an agreement in the years preceding the lawsuit may show their true intent. Total Minatome Corp. v. Union Texas , supra .
The agreement, Exhibit "B" (property of Sonya McCartney), states:
Payment of Seven Hundred Thousand and No/100 ($700,000.00) Dollars; with credit for a payment in the amount of $277,696.22 given to Sonya McCartney on or about June 30, 2011. Chad McCartney shall pay a minimum of $100,000.00 within ten (10) days of execution of the Community Property Agreement; with the remaining balance being due and payable on July 1, 2012. No interest shall be due.
The agreement does not allocate the tax burden or require Chad to pay in after-tax dollars. Normally, each party is to bear his or her own tax burden. If there is any ambiguity, it is best resolved by reference to equity, usages, and the conduct of the parties before and after the formation of the contract. La. C.C. art. 2053. Before she executed the agreement, Sonya accepted payment in mutual funds with a current market value of over $277,000, and, later, accepted two payments in mutual funds with current market values of over $68,000. This is notable because the value of the funds may rise or fall, depending on the markets, yet Sonya was content to accept the risk. In short, the parties' conduct before and after the formation of the agreement suggests that they intended to accept payments in some medium that might "short" the payee. In addition, Sonya initially accepted the two retirement accounts in payment, waiting 2½ years before contesting their after-tax value; the delay suggests that such payment was consistent with her view of the agreement, as well.
Moreover, a review of the exhibits to the agreement shows that the majority of the community property consisted of real property, interest in Chad's business corporation, and his two retirement accounts. Given this lack of liquidity, the parties may well have expected payment in a medium other than cash, such as by transfer of securities, with its concomitant risks.
By contrast, in Stewart v. Stewart , supra , the community property judgment specified a "cash equalization payment," while the instant agreement does not specify cash. Given the size and complexity of this community, the parties could have intended that some payments would not be in cash.
In light of the agreement's failure to allocate the tax burden, Sonya's conduct in accepting prior payments in mutual funds, and the nature and complexity of the community, it was plainly wrong for the district court to interpret the agreement as requiring payment of the whole amount in after-tax or cash money. The portion of the judgment ordering Chad to pay Sonya's tax burden of $41,100 is vacated. The judgment will be amended accordingly.
Denial of Credits
By his third assignment of error, Chad urges the court erred in failing to credit him for all payments made, including but not limited to Chad's payment of $68,320. He contends that each payment is "itemized and affirmatively pled in reduction of the debt." Citing La. C.C. art. 1868, he contends these payments should be imputed to the "debt that is already due," i.e., his obligation under the agreement.[4]
*1106 Sonya responds that Chad's trial counsel admitted he had no proof of the alleged payments, other than one Entergy bill for $1,927.93. She submits that because he offered "zero proof," this claim should fail.
The party who has the burden of proof must prove the fact in issue by a preponderance of the evidence. Hunter v. Morton's Seafood Rest. & Catering , 2008-1667 (La. 3/17/09), 6 So.3d 152 ; Ellis v. Brown , 50,690 (La. App. 2 Cir. 5/18/16), 196 So.3d 665. The failure to introduce into evidence receipts, invoices, copies of checks, or other normal proof of payment is fatal to the claim for reimbursement. Ellis v. Brown , supra ; Vedros v. Vedros , 16-735 (La. App. 5 Cir. 10/25/17), 229 So.3d 677, writs denied , 2017-02119 (La. 2/23/18), 237 So.3d 1185, 2018-0004 (La. 2/23/18), 237 So.3d 520, 520 ; Andrus v. Andrus , 93-856 (La. App. 3 Cir. 3/2/94), 634 So.2d 1254.
Sonya correctly notes that in response to a question by the court, Chad's trial counsel conceded "he has no documentary proof" of the payments. We recognize there was a certain level of informality in these proceedings.[5] However, we cannot overlook the total absence of proof. On this record, the district court was not plainly wrong to deny the claims of payment. However, credit will be given for the Entergy bill, $1,927.93, which Sonya concedes that Chad documented. This portion of the judgment will be amended and affirmed.
CONCLUSION
For the reasons expressed, the judgment is affirmed insofar as it denied Chad's claim for $68,320 in payments made, but credit is given for $1,927.93. The judgment is amended to give Chad credit for the face value of the retirement accounts, $137,000.00, rather than the after-tax amount. The fifth paragraph of the judgment is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Sonya McCartney and against Chad McCartney in the full sum of Fifty-two Thousand, Three Hundred and 59/100 ($52,300.59) Dollars, together with legal interest from the date of judicial demand, December 1, 2016, until paid, and for all costs of court including the expert witness fee of $625.00.
Appellate costs are to be divided evenly between the parties.
AMENDED AND AFFIRMED .

He cites Thaxton v. Roberson , 224 So.2d 183 (La. App. 3 Cir. 1969), in which a joint narrative of facts was not entered in the trial record; Patrick v. Johnstone , 312 So.2d 662 (La. App. 2 Cir. 1975), in which evidence regarding partition by licitation was "ambiguous"; and General Elec. Capital Auto Lease Inc. v. Jackson , 584 So.2d 1209 (La. App. 2 Cir. 1991), in which evidence of the prior suit was omitted on trial of an exception of lis pendens.

Sonya's petition alleged that Chad transferred the IRAs in June 2013, a point that his trial counsel seemed to concede, R.pp. 70-71, and not in December 2011, as appellate counsel asserts in brief.

Ramstack v. Krieger , 470 So.2d 162 (La. App. 4 Cir.), writ denied , 474 So.2d 1310 (1985) ; Hannan v. Hannan , 1999-0842 (La. App. 1 Cir. 5/12/00), 761 So.2d 700, writ denied , 2000-1723 (La. 9/29/00), 770 So.2d 349.

He also contends that courts should always impute payments to an existing debt, citing VVP America Inc. v. Design Build Dev. Servs. , 41,652 (La. App. 2 Cir. 1/31/07), 951 So.2d 461, 217 Ed. L. Rep. 1035.

In brief, Sonya refers to a pretrial conference in which the parties advised the judge that they were actually still living together for a time after their divorce, and the claimed credits were to pay household expenses for which Chad received a benefit. This is, of course, totally outside the record.