Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,848-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHRISTOPHER B. NASH                    Plaintiff-Appellee

versus

STEPHANIE NASH                         Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 610,891

Honorable Edwin Henry Byrd, III, Judge

* * * * *

WALTER F. JOHNSON, III                 Counsel for Appellant

LAW OFFICES OF J. DHU THOMPSON         Counsel for Appellee
By: J. Dhu Thompson

* * * * *

Before PITMAN, THOMPSON, and MARCOTTE, JJ.

THOMPSON, J., concurs with written reasons.

MARCOTTE, J., concurs in the result.

**PITMAN, C. J.**

Defendant-Appellant Stephanie Nash appeals the denial of a motion to annul a consent judgment because of error as to cause. For the following reasons, we affirm in part and reverse in part the judgment of the trial court but remand for further findings consistent with this opinion.

**FACTS**

Plaintiff-Appellee Christopher B. Nash and Stephanie were married and are the parents of two daughters. The parties separated and divorced in Caddo Parish. In 2018, when both children were minors, a custody decree was entered whereby Christopher was ordered to pay child support in the amount of $1,252.92 per month retroactive to September 2018. Stephanie filed a rule for contempt against Christopher for nonpayment of child support and arrearages; however, the award of arrearages was not considered for years.[1]

In May 2022, the trial court issued a 20-page partition judgment relating to community assets, expenses and obligations. Pursuant to a detailed descriptive list, the trial court determined the cash available to the parties in various bank, 401(K), annuity and trade accounts, as well as some refund checks due to them, equaled $69,416.94. It also valued property each party had in his/her possession and determined that Stephanie's value was $3,474 and Chrisotpher's was $2,090. The equity in their family home was $10,977.64. The gross value of community assets was determined to be $88,948.88.[2]

---

[1] These arrearages will be discussed later in this opinion.

[2] There is a discrepancy between what the trial court determined the value to be and what this court has calculated it to be. One-half of $88,948.88 is $44,474.44.

The trial court also determined that Christopher had reimbursement claims of $23,506.88 for his agreement to pay certain community debts, which Stephanie could not afford to pay. Stephanie was awarded possession of movables worth $7,589. The family home had already been sold; the equity in the home was $10,977.64, which the parties agreed to split equally at $5,488.82.

Also at issue in these proceedings was the value of a fifth-wheel RV, referred to by the judge as a camper, which was owned by the couple and was mortgaged. The partition judgment provided that the trial court had not assigned any value to the camper because it only represented a possible offset against the debt encumbering it. The camper was not listed in the detailed descriptive list, but the trial court ordered it to be sold and the sale proceeds applied to the $35,727.43 outstanding debt and, further, that the parties should continue to pay the note until the debt was extinguished.[3]

The decretal language of the partition judgment states as follows:

> [T]he court rules that Stephanie Nash is entitled to $44,474.31 representing her half of the gross community, less the $7589 she has been awarded in corporeal movables, for a net interest in the remainder of the gross community of $36,885.31. This must also be offset by the $23,506.88 she owes Christopher Nash in reimbursement claims. This leaves Stephanie with a pre-debt claim on the gross value of the community of $13,378.43. A disbursement to her of her half of the equity (in the house) will further reduce this interest, hereinafter referred to as the Residual Interest, to $7,889.61. (1/2 of equity is $5,488.82).

After finding the amount of gross community, Christopher's entitlement to reimbursement for payments of community debts of $23,506.88, deductions for movables in his possession and disbursement of

---

[3] This court has not been informed of the ultimate disposition of the camper.

2

the funds for equity in the family home, the trial court determined his residual interest in the community to be $60,127.37.

The judgment also states:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that once the residual interest of Stephanie is calculated after sale se (sic) is awarded the remaining amount of her Residual Interest from the liquid assets of the community up to the full value. She shall receive funds from each of the following accounts until they are exhausted in sequence up to the full amount of her residual interest.
> A.     Capital One Checking Account #5250
> B.     Aneca Federal Credit Union checking #7153
> C.     Nash Systems Checking Account
> D.     Nash Systems Savings Account
> E.     The E-Trade account in the name of Christopher Nash
> F.     Christopher Nash New York Life Annuity Account
>
> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that once satisfaction of Stephanie Nash's Residual Interest has been satisfied that Christopher Nash is awarded the remainder of the residual community property as sole owner.

Stephanie filed a motion for a new trial, claiming one was necessary for several reasons, including the decision regarding the RV, because she believed the trial court misunderstood the alleged waiver of her rights to spousal support. In her motion for new trial, she stated that she had sacrificed interim spousal support because Christopher was able and willing to pay community debts and she was not. She claimed that this had been discussed at a pretrial conference with a different trial judge and was not on the record. She stated that the partitioning judge had mistakenly assumed she was giving up all claims to spousal support in return for Christopher paying the house note, which she says is inaccurate.

Yet another judge, sitting pro tempore, found that Stephanie's remedy was more properly a motion to amend the partition judgment and so denied the motion for new trial in August 2022.

3

Stephanie filed a "Motion to Reset Hearing to Modify Custody, Establish Child Support, other Incidental Matters and Set Spousal Support." She alleged that the parties met in January 2019 to discuss their financial status and establish interim spousal support. At that time, the parties agreed in chambers that since Christopher was paying all the community debts and obligations, Stephanie was not awarded interim spousal support. She also alleged that since that time, Christopher never paid any spousal support but, instead, paid all the community debts and obligations. He has since requested reimbursement for those same payments. She reinstated her claim for interim spousal support for the 18 months from the date of Christopher's filing of divorce to the final judgment rendered on January 30, 2020.

A rule nisi was issued in which Christopher was ordered to appear and show cause why he should not be held in contempt for nonpayment of child support arrearages and extra expenses, why permanent child support should not be established and why spousal support should not be established from the date of separation until final judgment of divorce was rendered.

A hearing was held on January 11, 2023, and the last judge who considered this case signed a consent judgment on March 7, 2023, granting custody of the remaining minor child to Stephanie and awarding her child support in the amount of $973.79 per month, payable biweekly, and payment of medical and dental bills. The parties also agreed that the amount of child support in arrears and other incidental expenses totaled $12,611.92.

While conveying the parties' consent to the agreement, Christopher's attorney stated:

> The arrears and any underpaid medical and extracurricular which totals $12,611.92, this compromise will be---a credit will

4

be given by Christopher to Stephanie against the community debt that is the subject of another judgment.

Stephanie's attorney addressed the issue and stated:

The arrears that are tallied at $12,611.92 that have been asserted and agreed upon here today represent the child support arrears, the medical out-of-pocket arrears and the extracurricular arrears. So as of today's agreement, there will be no further arrears as to anything going forward on those issues, and the parties going prospective on the child support. This is credited against the property judgment that tallies around $55,000. . . . And I believe with regards to the spousal support issues, those are deemed moot as part of this agreement.

The consent judgment signed by the trial court restated the terms that the amount of $12,611.92 "shall be credited by Christopher B. Nash to Stephanie Nash against the community debt that is the subject of the community property settlement." The consent judgment also states that any/all spousal support issues are deemed moot as part of this agreement.

Less than a month later, Stephanie filed another "Rule to Show Cause for Consent Judgment to be Annulled and Other Matters." She claimed there had been a misunderstanding and error surrounding the application of the $12,611.92 child support judgment to the alleged debt she owed Christopher for paying off community debts. Further, she claimed he was supposed to pay her the residual interest of $7,889.61 from their joint accounts and keep the rest for himself. She also claimed that she and her attorney "misunderstood" the consent judgment and that the money she allegedly owed him was already in the bank accounts in Christopher's possession, which included community funds.

Stephanie prayed that a hearing be held and that the consent judgment be annulled, that a new trial on child support arrearages and extra expenses be held, that a judgment be rendered against Christopher for the money

5

owed to her under the judgment for child support arrearages and that an order for payment to her for her residual interest in the community property in the amount of $7,889.61 be rendered and enforced pursuant to the original partition judgment.

A hearing was held on June 15, 2023, before the same judge who had signed the consent judgment. The trial court considered whether the error in the judgment was a unilateral or a bilateral error. Stephanie testified that she had believed she owed Christopher money, but later realized she did not. Christopher testified that he also believed Stepanie owed him money. Despite this confusion, the trial court denied Stephanie's rule to show cause. Stephanie appeals the judgment of the trial court.

## DISCUSSION

Stephanie appeals the judgment rendered in January 2023 on the basis that a bilateral error and misunderstanding of the facts produced a failure of consent and cause. She argues that a consent judgment is a contract between the parties and, as such, may be annulled for error of fact or of the principal cause of the agreement. The basic principles of contract interpretation apply, including the determination of the common intent of the parties in forming the contract.

She argues that on the date the matter was heard in January, she did not expect any issues other than custody, child support and other expenses to be addressed. She did not have a copy of the original partition judgment with her; and when Christopher's attorney began asserting that she owed Christopher $55,000, she became confused. She stated that it was only because she was unaware that she did not owe him any money that she agreed to the allocation of the $12,611 to the alleged debt. For this reason,

6

she contends that the cause of the consent judgment was to reduce some of the debt she erroneously assumed she owed to Christopher, which she later realized was incorrect, and that Christopher actually owed her money. The error as to principal cause became apparent and the annulment of the consent agreement became necessary. She asserts that error vitiates consent when it concerns a cause without which the obligation would not have been incurred.

She further argues she would not have agreed to reimburse Christopher for anything she did not actually owe to him, including crediting child support arrearages he had never paid. She contends that while unilateral error is enough to vitiate this contract, there was actually bilateral error, because Christopher also believed she owed him money, but she did not. She claims that Christopher's interpretation is not borne out by a reading of the community partition judgment rendered in May 2022.

Christopher argues that there is no basis upon which this consent judgment should be annulled. He contends that the purpose of the hearing on January 11, 2023, was to discuss custody and support of the parties' minor children. He claims that Stephanie's attorney advised the court that the parties had reached an agreement on all matters pending before it and that the agreement included child support in the amount of $973.39 per month and that Stehpanie had agreed to a "compromise" giving him credit for the full amount of child support arrearages and related expenses in the amount of $12,611.92 to offset the community debt she owed to him. He also argued that his attorney confirmed the agreement and made it clear that it extinguished any alleged arrearages in exchange for a credit in the same

7

amount toward the approximately $55,000 owed to him as ordered in the partition judgment.

Christopher further argues that compromise agreements with the purpose of avoiding litigation are favored in the law and should not be held void without a clear showing that the agreement violates good morals or the public interest. For these reasons, he contends the trial court correctly denied the motion to annul the consent judgment.

A husband and wife's agreement to partition community property is a transaction and compromise as contemplated by La. C.C. art. 3071. *Branton v. Branton*, 52,570 (La. App. 2 Cir. 5/22/19), 273 So. 3d 666. A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings. La. C.C. art. 3072. It settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express and precludes the parties from bringing a subsequent action based upon the matter that was compromised. La. C.C. art. 3076; La. C.C. art. 3080. A compromise agreement, like other contracts, is the law between the parties and must be interpreted according to the parties' true intent. *Suire v. Lafayette City-Par. Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37; *McCartney v. McCartney*, 52,209 (La. App. 2 Cir. 8/15/18), 256 So. 3d 1101.

A consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. *Williams v. Williams*, 586 So. 2d 658 (La. App. 2 Cir. 1991). A consent judgment has binding force from the acquiescence of the parties and not from the adjudication of the court. *Id.* Thus, consent judgments, as opposed to other final judgments which are rendered against a party without consent, may be annulled for error of fact or of the principal cause of the agreement. *Id.*

A contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause. *Williams*, *supra*. However, a consent judgment needs no other cause or consideration than an adjustment of differences and a desire to set at rest all possibility of litigation. *Id.*

Consent to a contract may be vitiated by error, fraud or duress. La. C.C. art. 1948; *Haygood v. Haygood*, 52,435 (La. App. 2 Cir. 1/16/19), 264 So. 3d 1226. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949. Cause is a reason why a party obligates himself. La. C.C. art. 1967. Thus, there are three elements that a party claiming error must prove to obtain relief from the contract: (1) that he was in error, (2) the error concerned a "cause" and (3) the other party knew or should have known of that cause. *Haygood*, *supra*.

The requirement that the party seeking enforcement of the contract have actual or constructive knowledge of the errant party's affected cause creates an objective standard for establishing consent to a contract.

9

*Haygood*, *supra*. The mere lack of a subjective meeting of the minds does not prevent formation of an enforceable contract. *Id.*

While only one party's reason or cause for the contract is wrongly expressed in his consent to the contract, that error alone will not allow for rescission of the contract unless the other party can be said to be responsible for his knowledge, actual or constructive, of the mistaken reason of the first party. Saul Litvinoff, *"Error" in the Civil Law, Essays on the Civil Law of Obligations* (J. Dainow ed. 1969), (where under the subcaption "The Problem of Mutual Error," Professor Litvinoff reviews the source article to Article 1949, former Article 1826); Revision Comment (d), La. C.C. art. 1949. While not the same as mutual mistake affecting the cause of both parties' obligations, the sharing of mistake addressed in article 1949 makes neither party innocent of the error, thus invalidating the expression of mutual intent in their contract. *Litvinoff*, *supra*. Rescission, or partial rescission in the case of reformation, applies. *Id.*

Even where the elements of vitiation of consent as it relates to cause are proven by a party, Louisiana courts refuse to grant relief to the errant party if the error is deemed "inexcusable." *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791, *citing* Saul Litvinoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion*, 50 La. L. Rev. 1 (1989). Excusable error is one in which the party in error did not fail to take elementary precautions that would have avoided his falling into error, such as making certain that he was reasonably informed. *Id.* Otherwise, the error is regarded as inexcusable, in which case the party does not obtain relief. *Id.* Personal circumstances of the party in error, such as age, experience and profession, are to be considered. *Id.* An error made by a professional person

10

concerning a matter within his field of expertise would no doubt be regarded as inexcusable. *Id.*

The trial judge's findings of fact regarding a party's error claim are subject to manifest error review. *Haygood*, *supra*. Where there are two permissible views of the evidence, the trial court's choice between them can virtually never be manifestly erroneous or clearly wrong. *Rosell v. Esco*, 549 So. 2d 840 (La. 1989). Findings based upon evaluations of the credibility of the parties are not manifestly erroneous and will not be overturned on appeal. *Id.*

This was by no means an easy case to try or reconcile; however, we believe the entire case was flawed by the fact that no less than four trial judges adjudicated the matter and that it lasted from 2018 until 2023. Stephanie's confusion resulting in the error was excusable. Christopher's confusion seems less excusable. However, confusion reigned supreme in this case since no one, not even the trial court, seemed to understand that Stephanie did not owe Christopher for any further reimbursement pursuant to the partition.

We find that there was bilateral error in the consent agreement and mutual error as to cause. As to this consent judgment, we affirm all the agreements between the parties except those related to the application of child support arrearages to the reimbursement debt of the partition. We reverse insofar as it relates to the allocation of the child support arrearages to Christopher's claim for reimbursement in the partition. The application of arrearages in child support and other debts to the claim for reimbursement is unfair. Stephanie's portion due to her from the partition had already been reduced by $23,506.88 when the final partition was signed, which is why

11

Stephanie was only due $7,889.61 from the former matrimonial assets. The child support arrearages of $12,611.92 were owed to her by Christopher and should not be applied to reduce the $23,506.88 because that amount had already been deducted from her portion and that is a final judgment. Further, Christopher is still in possession of all of the cash accounts from which he is to pay Stephanie her share.

We are not aware if Christopher has paid Stephanie any portion of the marital estate to which she is entitled pursuant to the partition, but she is entitled to payment of her portion of the partition from the cash accounts in Christopher's possession. The partition judgment is clear on how the funds should be distributed, coming from the cash accounts that are in Christopher's possession until she is paid, and he retains the remaining funds to meet the amount he is due.

Because it was improper to apply the child support arrearages to the alleged debt, pursuant to this decision, Chistopher is liable to Stephanie for $12,611.92 in child support arrearages.

Accordingly, this assignment of error has merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court denying the request of Defendant-Appellant Stephanie Nash to annul the consent judgment is reversed insofar as it relates to the application of the $12,611.92 child support arrearages to the claim for reimbursement in the partition judgment. In all other respects, the judgment is affirmed. The matter is remanded for modification of the consent decree to reflect that the arrearages in child support are due to Stephanie Nash and are not to be applied to any alleged debt of the partition agreement. Instead, Plaintiff-Appellee

12

Christopher B. Nash shall pay Stephanie her portion of the partitioned community, $7,889.61 in accordance with the partition judgment and owes her $12,611.92 in child support arrearages. Costs of this appeal are assessed to Christopher B. Nash.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.**

**THOMPSON, J., concurs.**

While not directly identified as an assignment of error but potentially embedded in the matter before the court, an issue is whether we are charged with revisiting the math in determining the residual interests of the parties. If we are, I find no language in the partition judgment or the consent judgment that creates an obligation of the wife to make payment to the husband of his residual interest of $60,127.37 specified in the partition judgment. If the wife was under the impression that she was responsible for funding his residual interest, she was mistaken. The husband was made whole by assets of the former community, and any additional amount he might claim to be owed from her would be a windfall. Any lingering obligations and claims between the former spouses were resolved in the consent judgment, which established the wife is entitled to a credit of the child support arrearage of $12,611.92 against her portion camper loan deficiency.